**NOT YET SCHEDULED FOR ORAL ARGUMENT**

# United States Court of Appeals
# for the District of Columbia Circuit

## No. 14-7170

MICHALI TOUMAZOU, *et al.*,

*Plaintiffs-Appellants*,

– v. –

TURKISH REPUBLIC OF NORTHERN CYPRUS, *et al.*,

*Defendants-Appellees*.

_____

*On Appeal from the United States District Court for the District of Columbia,
Honorable Paul Friedman, No. 09-cv-1967-PLF*

# BRIEF FOR DEFENDANT-APPELLEE
# TURKISH REPUBLIC OF NORTHERN CYPRUS

David S. Saltzman
SALTZMAN & EVINCH, PLLC
1050 K Street, NW, Suite 1150
Washington, D.C. 20001
Telephone: 202-637-9877

*Counsel for Appellee
Turkish Republic of Northern Cyprus*

August 6, 2015

## CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

Pursuant to this Court's Circuit Rule 28(a)(1), counsel for Defendant-Appellee Turkish Republic of Northern Cyprus certifies the following:

### A. Parties and *Amici*

Plaintiffs in the court below and Appellants in this Court are Michali Toumazou, Nicolas Kantzilaris and Maroulla Tompazou. Defendants in the court below and Appellants in this Court are Turkish Republic of Northern Cyprus ("TRNC"), HSBC Holdings plc, HSBC Group, and HSBC Bank USA, N.A.

There are no intervenors, and there are no *amici* before this Court.

### B. Rulings Under Review

Under review is the September 30, 2014 Final Judgment and Order issued by U.S. District Judge Paul L. Friedman in *Toumazou, et al. v. Turkish Republic of Northern Cyprus, et al.*, Civil Action No. 09-1967 (PLF) (D.D.C 2014) [Dkt. No. 52], in the District Court below granting TRNC's motion to dismiss for lack of personal jurisdiction, granting the HSBC Appellees' motion to dismiss for failure to state a claim, and denying Plaintiffs' motion for leave to file a third amended complaint. Pursuant to this Order, Judge Friedman entered an Opinion on October 9, 2014. [Dkt. No. 53].

Plaintiffs filed their Notice of Appeal in the District Court below on October 29, 2014. [Dkt. No. 55].

## C. Related Cases

The following are related cases that were dismissed by the District Court and were not appealed:

- *Fiouris, et al. v. Turkish Cypriot Community, et al.*, Case no. 10-1225 (PLF), dismissed October 31, 2014, and

- *Latchford, et al. v. Turkish Republic of Northern Cyprus, et. al.*, Case no. 12-0846 (PLF), dismissed October 31, 2014.

Dated: Aug. 6, 2015                            Respectfully Submitted:

<u>/s/David Saltzman</u>
David Saltzman

*Counsel for Appellee Turkish Republic of Northern Cyprus*

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW AND
RELATED CASES ........................................................................... i

TABLE OF CONTENTS ................................................................. ii

TABLE OF AUTHORITIES ........................................................... vi

STATEMENT OF THE ISSUES ...................................................... 1

STATEMENT OF THE CASE .......................................................... 1

    A.  Nature of the Case ................................................................. 1

    B.  Course of Proceedings .......................................................... 4

    C.  Jurisdictional Grounds Alleged ............................................ 8

    D.  Jurisdictional Factss Alleged ............................................. 11

SUMMARY OF ARGUMENT ....................................................... 12

ARGUMENT ................................................................................. 16

I.    THE DISTRICT COURT CORRECTLY HELD THAT IT LACKS
      PERSONAL JURISDICTION OVER TRNC. ............................ 16

    A.  Appellants Have Failed to Make a *Prima Facie* Showing of
        Pertinent Jurisdictional Facts. .......................................... 17

        1.  Appellants Do Not Contest TRNC's Affidavits. ............. 18

        2.  TRNC's Uncontested Affidavits Directly Contradict Appellants'
           Jurisdictional Allegations. ............................................. 19

    B.  TRNC Contacts Through Its D.C. Representative Office Are
        Excluded From Jurisdictional Consideration. ...................... 25

    C.  General Personal Jurisdiction Over TRNC Does Not Exist in the
        District of Columbia Because TRNC is Neither "At Home" Here,
        Nor Has It "Consented" to Personal Jurisdiction Here. ......... 28

D.  Specific Personal Jurisdiction Over TRNC Does Not Exist Under the District's Long-Arm Statute Because None of Appellants' Claims Arise From TRNC's Contacts in the District. ............................ 29

  1.  Jurisdiction Cannot Be Exercised Under D.C. Code § 13–423(a)(1) Because Appellants' Property Claims Do Not Arise From Any of TRNC's Transactions in the District. ......................... 31

  2.  Jurisdiction Cannot Be Exercised Under D.C. Code §§ 13-423(a)(3)-(4) Because Appellants Do Not Allege Any Injury in the District of Columbia. ................................................... 36

  3.  Jurisdiction Cannot Be Exercised Under D.C. Code § 13-423(a)(5) Because Appellants' Property Claims Do Not Arise From TRNC's Lease of Office Space in the District of Columbia. ........................................................................ 37

E.  TRNC's Alleged Nationwide Contacts Do Not Satisfy Federal Rule 4(k)(2)'s Requirements For Federal Long-Arm Personal Jurisdiction. ................................................................. 37

  1.  Appellants' Claims Do Not Arise Under Federal Law. .................... 38

  2.  TRNC's Few Alleged Nationwide Contacts Do Not Support General or Specific Personal Jurisdiction. ........................................ 40

F.  Conspiracy Theory of Jurisdiction Cannot Apply Because Appellants' Few Allegations of Conspiracy Are Insufficient. ................ 41

G.  Exercising Jurisdiction Over TRNC Based on the Facts Alleged Would Violate Due Process Because TRNC Could Not Reasonably Anticipate Being Haled into District of Columbia Courts. .................... 42

II.  APPELLANTS' REFERENCES TO (A) CLAIMS MADE IN THEIR PROPOSED THIRD AMENDED COMPLAINT, (B) RELATED CASES NOT APPEALED, AND (C) NEW ARGUMENTS SHOULD BE IGNORED. ............................................................................. 43

A.  Appellants' References to Claims Made in their Proposed Third Amended Complaint, Which The District Court Declared Futile and Did Not Accept, Should be Ignored. ........................................ 43

B.  This Court Lacks Jurisdiction to Consider the *Fiouris* and *Latchford* Cases Because They Were Not Appealed. ............................................... 44

C.  Appellants' Arguments Raised For The First Time on Appeal Should Be Ignored By This Court. ........................................................ 45

III. THE DISTRICT COURT PROPERLY DENIED JURISDICTIONAL DISCOVERY. ................................................................................ 46

IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED APPELLANTS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT BECAUSE THE PROPOSED AMENDMENTS WOULD NOT CURE THE JURISDICTIONAL DEFECTS AGAINST TRNC ...................................... 49

A.  The District Court Lacks Standing Over TRNC Because Appellants Have Named It as an "Unincorporated Association." ............................ 50

CONCLUSION ........................................................................................ 52

CERTIFICATE OF COMPLIANCE ..................................................... 53

CERTIFICATE OF SERVICE ............................................................ 54

# TABLE OF AUTHORITIES

## Cases

*Al Magaleh v. Hagel,*
  738 F.3d 312 (D.C. Cir. 2013).................................................................47

*\*Alkanani v. Aegis Def. Servs., LLC,*
  976 F. Supp. 2d 13 (D.D.C. 2014)......................................... 22, 26, 32

*ALPO Petfoods, Inc. v. Ralston Purina Co.,*
  720 F. Supp. 194 (D.D.C. 1989)................................................ 38, 39

*Arbaugh v. Y & H Corp.,*
  546 U.S. 500 (2006).................................................................39

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................18

*Atraqchi v. Wal-Mart Stores, Inc.,*
  168 F. App'x 442 (D.C. Cir. 2005).........................................17

*Bailey v. Patterson,*
  369 U.S. 31 (1962)...................................................................39

*Burger King v. Rudzewicz,*
  471 U.S. 462 (1985).................................................................43

*Crane v. Carr,*
  814 F.2d 758 (D.C. Cir. 1987).......................................... 32, 33, 36

*Crane v. New York Zoological Soc.,*
  894 F.2d 454 (D.C. Cir. 1990).................................................18

*Crist v. Republic of Turkey,*
  995 F. Supp. 5 (D.D.C. 1998)..............................................2, 4

*\*Daimler AG v. Bauman,*
  134 S. Ct. 746 (2014)..................................... 29, 30, 32, 40

*Elmer v. Philipp Holzmann A.G.,*
  533 F.Supp. 2d 116 (D.D.C. 2008)................................. 18, 22

_____

*Authorities upon which we chiefly rely are marked with asterisks.

*Envtl Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,*
355 A.2d 808 (D.C. 1976) ...................................................................26

*Fandel v. Arabian Am. Oil Co.,*
345 F.2d 87 (D.C. Cir. 1965)...............................................................26

*FC Inv. Grp. LC v. IFX Markets, Ltd.,*
529 F.3d 1087 (D.C. Cir. 2008)...........................................16, 17, 46

*Fiouris, et al. v. Turkish Cypriot Community, et al.,*
Case No. 10-1225 (PLF) (D.D.C. Oct. 31, 2014)..................15, 44, 45

*Firestone v. Firestone,*
76 F.3d 1205 (D.C. Cir. 1996)..............................................................49

*First Chi. Int'l v. United Exch. Co.,*
836 F.2d 1375 (D.C. Cir. 1988)............................................... 17, 41

*Flynn v. C.I.R.,*
269 F.3d 1064 (D.C. Cir. 2001).............................................................46

*Forman v. Davis,*
371 U.S. 178 (1962)................................................................................49

*Geier v. Conway, Homer & Chin-Caplan, P.C.,*
983 F. Supp. 2d 22 (D.D.C. 2013)...................................................42-43

*Goodyear Dunlop Tire Operations, S.A. v. Brown,*
131 S. Ct. 2846 (2011).......................................... 29, 30, 31, 40

*Gravenstein v. Campion,*
96 F.R.D. 137 (D.C.A. 1982).................................................................52

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
466 U.S. 408 (1984)......................................................................... 31, 36

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,*
456 U.S. 694 (1982)......................................................................... 28, 29

*Int'l Creative Talent Agency v. Turkish Rep. Of Northern Cyprus,*
856 F. Supp. 2d 223 (D.D.C. 2012)................................................... 1-2

*Int'l Shoe Co. v. Washington,*
326 U.S. 310 (1945)................................................................................31

*Kowal v. MCI Communications Corp.,*
  16 F.3d 1271 (D.C. Cir. 1994) ..................................................................18

*Lans v. Adduci Mastriani & Schaumberg L.L.P.,*
  786 F. Supp. 2d 240 (D.D.C. 2011) .........................................................18

*Latchford, et al. v. Turkish Republic of Northern Cyprus, et al.,*
  Case No. 12-0846 (D.D.C. Oct. 31, 2014) ........................... 16, 44, 45

*Mandelkorn v. Patrick,*
  359 F. Supp. 692 (D.D.C. 1993) ..............................................................41

*Millenium Square Residential Ass'n v. 2200 M Street LLC,*
  952 F. Supp. 2d 234 (D.D.C. 2013) .........................................................50

*Naartex Consulting Corp. v. Watt,*
  722 F.2d 779 (D.C. Cir.1983) .......................................................... 26, 32

*Novak–Canzeri v. Al Saud,*
  864 F. Supp. 203 (D.D.C. 1994) ..............................................................18

*Orellana v. CropLife Int'l,*
  740 F. Supp. 2d 33 (D.D.C. 2010) ...........................................................32

*Plan Comm. v. Pricewaterhousecoopers, LLP,*
  2007 WL 1191917 (D.D.C. Apr. 20. 2007) .............................................50

*Podiatrist Ass'n v. La Cruz Azul de P.R., Inc.,*
  332 F.3d 6 (1st Cir. 2003) ........................................................................38

*Reuber v. United States,*
  787 F.2d 599 (D.C. Cir. 1986) ......................................................... 17, 19

*Salazar ex rel. Salazar v. District of Columbia,*
  602 F.3d 431 (D.C. Cir. 2010) .................................................................46

*Second Amendment Foundation v. U.S. Conference of Mayors,*
  274 F.3d 521 (D.C. Cir. 2001) .................................................................17

*Shirlington Limousine v. San Diego Union-Tribune,*
  566 F. Supp. 2d 1 (D.D.C. 2008) .............................................................18

*Sierra Club v. Tenn. Valley Auth.,*
  905 F. Supp. 2d 356 (D.D.C. 2012) .........................................................26

*Sierra Club v. U.S. Army Corps. of Eng'rs,*
  2014 WL 4066256 (D.D.C. Aug. 18, 2014) ..........................................43

*Simon v. Republic of Hungary,*
  37 F. Supp. 3d 381 (D.D.C. 2014)......................................................47

*U.S. v. Gewin,*
  759 F.3d 72 (D.C. Cir. 2014) ............................................................46

*Williams v. Romarm, SA,*
  765 F.3d 777 (D.C. Cir. 2014) ..........................................................46

*World Wide Minerals Ltd. v. Kazakhstahn,*
  116 F. Supp. 2d 98 (D.D.C. 2000) .....................................................32

*World–Wide Volkswagen Corp v. Woodson,*
  444 U.S. 286 (1980) .........................................................................42

**Statutes**

15 U.S.C. § 1125(a) .......................................................................... 37, 38

D.C. Code § 13-334(a) ........................................................................ 8, 32

*D.C. Code § 13-423(a)...........................................8, 9, 30-34,  36, 37, 45

**Rules**

Fed. R. Civ. P. 17 ................................................................................50

Fed. R. Civ. P. 23 ........................................................................... 50, 51

Fed. R. Civ. P. 23.2 .............................................................................51

*Fed. R. Civ. P. 4(k)(2)..............................................8, 9, 16, 37-39

Local Rule 5(c)(1) ...............................................................................10

## STATEMENT OF THE ISSUES

I.     Whether the District Court may assert general personal jurisdiction over TRNC, a foreign governmental entity based on the island of Cyprus, based on contacts that are not so constant and pervasive as to render it "essentially at home" in the District of Columbia.

II.     Whether the District Court has specific personal jurisdictional over TRNC based on facts sufficient to meet the requirements of D.C. Code § 13-423(a)(1) and §13-423(3)-(5), the District's long-arm statute.

III.     Whether the District Court may assert personal jurisdiction over TRNC under the federal long-arm statute, Federal Rule 4(k)(2), for Appellants' Lanham Act claim based on TRNC's nationwide contacts.

IV.     Whether the District Court abused its discretion when it held that Appellants' conclusory statements alleging that TRNC advertises and sells property through its Washington, D.C. representative office and website do not warrant jurisdictional discovery.

V.     Whether the District Court abused its discretion when it denied Plaintiffs' Motion for Leave to File a Third Amended Complaint because the proposed amendments would not cure the jurisdictional defects in Appellants' Second Amended Complaint.

## STATEMENT OF THE CASE

**A. Nature of the Case**

Appellants' suit seeks to utilize the courts of the United States to resolve decades-old land claims on the island of Cyprus stemming from a war there in 1974 and population exchanges from the same era. As in a similar and contemporaneous action brought by the same counsel against TRNC, Appellants' Complaint "reads more like a political manifesto than a … [land claims] suit." *Int'l*

*Creative Talent Agency v. Turkish Republic Of Northern Cyprus*, 856 F. Supp. 2d 223, 225 (D.D.C. 2012) (dismissed for failure to state a claim, no appeal taken). The heated rhetoric employed by Appellants throughout these proceedings emphasizes Appellants' goal of inserting U.S. federal courts into an ongoing international dispute that has now spanned four decades. Appellants ignore the existing political and legal frameworks dedicated to resolving all matters in dispute on Cyprus overseen by the island's two communities under the supervision of the United Nations and the European Union, and with the support of the United States government.

The political dispute over the island of Cyprus indeed is longstanding. Once a British colony, the Republic of Cyprus was established in 1960 pursuant to mutual agreement among Turkey, Greece, and Great Britain following years of sporadic inter-communal strife on the island. *Crist v. Republic of Turkey*, 995 F. Supp. 5, 7 (D.D.C. 1998). After independence, Cyprus attempted to unify with Greece, resulting in further inter-communal violence. *Toumazou* Opinion ("Op."), Joint Appendix ("JA") 286; *Crist*, 995 F. Supp. at 7.[1] Fighting erupted on the

---

[1] The abbreviations used to identify the record throughout this Opinion are: Plaintiffs' Second Amended Complaint ("Compl."), JA 25 [Dist. Ct. Dkt. No. 14]; TRNC's Motion to Dismiss for Lack of Personal Jurisdiction ("TRNC Mot.") [Dist. Ct. Dkt. No. 16]; TRNC Statement of Facts ("TRNC Facts") [Dist. Ct. Dkt. No. 16-2]; Akil Affidavit ("Akil Aff."), JA 54 [TRNC Mot. Ex. 2, Dist. Ct. Dkt. No. 16-3]; Zorlu Affidavit ("Zorlu Aff."), JA 102 [TRNC Mot. Ex. 3, Dist. Ct. Dkt. No. 16-3]; Plaintiffs' Opposition to TRNC's Motion to Dismiss ("Pls. Opp.")

island in July 1974, after the military government in Greece instigated a coup and ousted the elected government on Cyprus. Op., JA 286 (citing *Crist*, 995 F. Supp. at 7). In response, Turkish forces intervened to forestall Cyprus' unification with Greece and prevent ethnic cleansing of the Turkish Cypriot population. Op., JA 287. When the ceasefire was declared in August of 1974, Turkey controlled roughly the northern one-third of the island of Cyprus. *Crist*, 995 F. Supp. at 7. The Turkish Cypriots established a functioning government, the "Turkish Federated State of Cyprus" in 1974, leading to the declaration of the "Turkish Republic of Northern Cyprus" in 1983. *Id.*

The 1974 war brought about the separation of the island's two ethnic communities, which was furthered via UN-mediated population exchanges, as Turks generally moved north and Greeks generally moved south. TRNC Facts 17. The Turkish Federated State of Cyprus adopted a law whereby newly arrived Turkish Cypriots from the south would be allotted "abandoned" Greek Cypriot property in the north, provided that they renounce all rights to their former property of equal value now in the southern, Greek part of the island. Op., JA 288

---

[Dist. Ct. Dkt. No. 20]; TRNC's Reply to Plaintiffs' Opposition to TRNC's Mot. ("TRNC Reply") [Dist. Ct. Dkt. No. 26]; Supplemental Akil Affidavit ("Suppl. Akil Aff."), JA 158 [TRNC Reply Ex. 1, Dist. Ct. Dkt. No. 26-1]; Plaintiffs' Motion for Leave to Amend the Second Amended Complaint ("Pls. Mot. to Amend") [Dist. Ct. Dkt. No. 29]; TRNC's Opposition to Plaintiffs' Motion for Leave to Amend ("TRNC Opp. to Amend") [Dist. Ct. Dkt. No. 31]; Opinion ("Op."), JA 286 [Dist. Ct. Dkt. No. 52].

(citing TRNC Facts 17-18). Today, TRNC comprises that part of the island of Cyprus north of the "Green Line", maintained by the United Nations Peacekeeping Force in Cyprus.[2] Though recognized only by the Republic of Turkey, it is a functioning democratic government with its capital in Lefkoşa.[3] In 2005, TRNC created the Immovable Property Commission to provide Greek Cypriots a domestic remedy for claims relating to their properties in North Cyprus. Op., JA 288 n. 4 (stating that the European Court of Human Rights has upheld the adequacy of the IPC in resolving these property disputes).

## B. Course of Proceedings.

On October 19, 2009, Appellants, only one of which perhaps resides in the United States, filed their original complaint alleging that TRNC committed a litany of offenses, the gravamen of which is the dispossession of real property during Turkey's military intervention on Cyprus in 1974. Complaint [Dist. Ct. Dkt. No. 1]; TRNC's Mot. 3. Appellants filed an "errata," which was later renamed as a "Corrected Class Action Complaint" on February 16, 2010, which was in fact a substantially amended complaint containing at least 34 new paragraphs, three new exhibits, and two additional causes of action. [Dist. Ct. Dkt. No. 5]. On March 19,

---

[2] The geographic area governed by Appellee TRNC is referred to herein as "North Cyprus."

[3] Lefkoşa is the Turkish Cypriot half of the divided city of Nicosia.

2010, Appellants filed a second amended complaint, with the consent of TRNC.

Second Amended Complaint, JA 25.

Appellants' Second Amended Complaint (hereinafter "Complaint")[4], which

was the sole complaint considered by the District Court and, therefore, is the sole

complaint subject of this appeal, alleged that TRNC unlawfully confiscated

property in North Cyprus, including property belonging to Appellants, and

masterminded a grand scheme to profit from and sell these properties around the

world with the assistance and support of the HSBC defendants. Compl. ¶¶ 44-45,

JA 37.

TRNC filed its Motion to Dismiss Appellants' Second Amended Complaint

for Lack of Personal Jurisdiction on April 2, 2010.[5]  TRNC Mot. To demonstrate

the inaccuracy of Appellants' factual allegations and assist the District Court in

clarifying the issues for resolution, TRNC provided a Counterstatement of Facts

with a short history of recent events that have occurred in Cyprus. TRNC Facts.

TRNC also provided two affidavits of its Washington, D.C. Representative, Mr.

---

[4] All references to the Complaint are to Plaintiffs' Second Amended Complaint, on which the District Court ruled. Appellants make numerous references to their proposed third amended complaint, which they abbreviate as "TAC," and which this Court should ignore. *See infra* Sect. II.A.

[5] In its Motion to Dismiss, TRNC reserved the right to file further motions to dismiss the Complaint, based on other defenses including, but not limited to, lack of subject matter jurisdiction and failure to state a claim should the Court assert personal jurisdiction over TRNC. *See* TRNC Mot. 2. TRNC reiterates that it will raise similar defenses should this Court remand the case to the District Court and the District Court assert personal jurisdiction over TRNC.

Hilmi Akil, thoroughly disproving Appellants' jurisdictional allegations. *See* Akil Aff., JA 54; Suppl. Akil Aff. JA 158. Appellants' Opposition to the Motion to Dismiss and TRNC's Reply thereto were filed on May 5, 2010 and June 14, 2010, respectively. Almost a year later, on April 12, 2011, Appellants requested leave to file a third amended complaint seeking to add 758 plaintiffs and several new claims. TRNC opposed.

On September 30, 2014, the District Court granted TRNC's Motion to Dismiss for Lack of Personal Jurisdiction. JA 284 U.S. District Judge Friedman concluded that the District Court "lacks personal jurisdiction over the TRNC," and furthermore, "that it would be futile to permit plaintiffs to file an amended complaint." Op., JA 289. Appellants filed their notice of appeal with the District Court on October 29, 2014. Notice of Appeal to D.C. Circuit [Dist. Ct. Dkt. No. 55].

On October 30, 2014 this Court issued a scheduling order listing the dates to file initial submissions including the Certificate as to Parties, Rulings, and Related Cases and procedural and substantive motions. On December 1, 2014, the deadline for submission of both parties' initial submissions, counsel for Appellants filed an Emergency Motion to extend the deadline until December 8, 2014, citing their counsel's "severe health issues," ¶ 3 D.C. Cir. Dkt. No. 1524845, which was granted. *See* Clerk's Order [D.C. Cir. Dkt. No. 1532512]. On February 3, 2015, a

revised briefing schedule was issued, according to which Appellants' opening brief would be due on March 16, 2015. [D.C. Cir. Dkt. No. 1535749]. On March 10, Appellants e-mailed Appellees seeking consent for an additional two-week extension, citing their counsel's "health and the recent horrible winter weather that has affected [his] work schedule," Appellees consented, and the extension was granted. [D.C. Cir. Dkt. No. 1542339]. Four days before Appellants' opening brief was due per the revised schedule, Appellants' counsel moved to delay filing their opening brief until March 30, 2015 due to "the ongoing health issues of [Appellants'] counsel, for [sic] the recent harsh winter weather conditions that have affected his workload and ability to prepare the appellants' brief within the prescribed time frame." Mot. For Extension of Time ¶ 2 [D.C. Cir. Dkt. No. 1542017]. This motion, too, was granted. [D.C. Cir. Dkt. No. 1542339]. On March 30, 2015, Appellants' counsel requested and was later granted yet another Motion seeking a one-week extension of the briefing schedule owing to "aggravated health issues that interfered with completing the brief," Mot. for Extension of Time ¶ 1 [D.C. Cir. Dkt. No. 1545001], which was granted. [D.C. Cir. Dkt. No. 1545158]. Finally on April 6, 2015 Appellants filed their opening brief with this Court. [D.C. Cir. Dkt. No. 1546084].

To all Appellees' surprise, nine days later, Appellants filed another 30-page opening brief with this Court, styled as an "errata," occasioned by a "computer

crash on 4/6 and for health reasons." The "errata" consisted of restated, renumbered, and new arguments, as well as new record references, and new citations. [D.C. Cir. Dkt. No. 1547578]. On April 21, 2015 Appellants filed yet another version of their opening brief bearing substantial modifications. [D.C. Cir. Dkt. No. 1548518]. On April 30, 2015, Appellants' original opening brief and "errata" were stricken, and the April 21 amended brief was declared accepted. Clerk's Order [D.C. Cir. Dkt. No. 1550037]. It is that brief to which TRNC now responds.

## C. Jurisdictional Grounds Alleged.

Appellants' Complaint, though without reference to statute, asserted two grounds for personal jurisdiction over TRNC, pursuant to the "doing business clause" under the District's general jurisdiction statute, D.C. Code § 13-334(a), and the "transacting any business in the District of Columbia" clause under the District of Columbia's long-arm statute, D.C. Code § 13-423(a)(1). Compl. ¶ 2, JA 27. In their Opposition to TRNC's Motion to Dismiss, they further asserted that the federal long-arm statute, Fed. R. Civ. P. 4(k)(2), applied. Op., JA 296. The District Court properly rejected each. *Id.*, JA 292, 296, 297.

On appeal, Appellants concede that general personal jurisdiction under D.C. Code § 13-334(a) does not exist, while they assert five additional grounds for

personal jurisdiction over TRNC. None of these grounds suffice.[6] Specifically,
Appellants assert specific personal jurisdiction under four provisions of the District
of Columbia's long-arm statute, D.C. Code § 13-423(a): (i) "transacting any
business in the District of Columbia," § 13-423(a)(1), which was considered
below; (ii) "causing tortious injury in the District of Columbia by an act or
omission in the District of Columbia," § 13-423(a)(3); (iii) "causing tortious injury
in the District of Columbia by an act or omission outside the District of Columbia,"
§ 13-423(a)(4); and finally (iv) "having an interest in, using, or possessing real
property in the District of Columbia," § 13-423(a)(5). Appellants' Br. 8-9.
Additionally, they assert personal jurisdiction under (v) the federal long-arm
statute, Fed. R. Civ. P. 4(k)(2), which was considered below, Appellants' Br. 21;
(vi) the conspiracy theory of jurisdiction, *id.* at 17; and (vii) their own novel
formulation, "consent jurisdiction," *id.* at 18-19.

 Appellants allege that TRNC "unlawfully interfere [sic] with [Appellants']
property, real and personal, in northern areas of the Republic of Cyprus [] and has
masterminded a broad scheme to profit from the sale of such properties 'in the
United States, Europe and around the world with the aid, assistance and support of
HSBC Group.'" Appellants' Br. 2-3 (citing Compl. ¶ 45, JA 37).

---

[6] And none of Appellants' new arguments for jurisdiction warrant consideration
because arguments not raised below are not preserved for appeal. *See infra Sect. II.
C.*

9

TRNC's interference with Appellants' property is alleged to have given rise to this suit. Appellants do not dispute, nor can they, that (i) all of the property at the root of Appellants' causes of action is located on the island of Cyprus, (ii) no injury has been suffered in the District of Columbia, and (iii) none of the Appellants reside in the District of Columbia, and only one perhaps resides in the United States.

Regarding the possibility that none of the Appellants resides in the United States, TRNC argued below that Appellants failed to provide a full address for Michali Toumazou, the sole alleged U.S. resident plaintiff. Toumazou listed only a P.O. Box address in North Carolina, whereas Local Rule 5(c)(1)[7] requires a party's first filing to provide his or her "full residence address." Though the District Court ruled on other grounds, this ongoing failure to provide a full residence address should be a bar to personal jurisdiction because it has remained uncorrected since the filing of the Appellants' original complaint in 2009, despite ample opportunity to do so. *See* Local Rule 5(c)(1) ("Failure to provide the address information within 30 days upon filing may result in the dismissal of the case against the defendant.").

---

[7] Formerly Local Rule 5.1(e).

**D. Jurisdictional Facts Alleged.**

In their Complaint and opening brief, Appellants assert a collection of

jurisdictional facts that can be summarized as follows:

1. TRNC leases or owns office space in the District of Columbia, Appellants' Br. 8 n.12, 11, 14;

2. TRNC hires employees and uses letterhead, phone, email, facsimile and a postal address in the District of Columbia, *id.* at 6, 14;

3. TRNC advertises for sale and provides tips and forms on how to buy properties belonging to displaced Greek Cypriots, including that of Appellants, at its office in the District of Columbia, *id.* at 3, 5, 13, 15, 16, 20;

4. TRNC advertises property for sale, and promotes tourism, travel and lodging by having maps available for office visitors, *id.* at 12, 16;

5. TRNC maintains bank accounts and conducts transactions with HSBC, *id.* at 14, 15, 16;

6. TRNC operates an interactive website from its District of Columbia office that provides a variety of real estate and tourism information to members of the public, *id.* at 15 (citing Akil Aff. and Akil Suppl. Aff.), 10, 14-16;

7. TRNC through its agents, use monies obtained from HSBC USA, to create a website directed at individuals in the District of Columbia, *id.* at 16;

8. TRNC refers to itself as an embassy, government, 'defacto' state or republic, *id.* at 13;

9. TRNC's representative is in "contact [via e-mail, telephone, and U.S. mail] with business visitors in the District of Columbia," *id.* at 15-16 (citing Akil Aff. ¶¶ 16, 23, 25, 31, JA 61, 63, 66 );

10. TRNC's representative wrote letters to newspapers and spoke at universities, *id.* at 14;

11. TRNC intervened in litigation in 1989 and hired lawyers to do so, *id.* at 14;

12. TRNC appointed U.S. business owners as representatives, *id.* at 14;

11

13.    TRNC was "[i]nvolved in the Small Business Administration's 'Entrepreneur[ship]' New Orleans conference material of April 2006," *id.* at 14.

14.    TRNC has a "West Cost" and a New York representative, *id* at 15.

These allegations can be condensed into five general categories: (i) advertising and selling properties in North Cyprus by (ii) maintaining an office in the District of Columbia, (iii) having maps of North Cyprus available at that office, (iv) maintaining a website in the District of Columbia, and (iv) maintaining various nationwide contacts that do not touch or concern the District of Columbia.

As demonstrated below, these allegations are insufficiently specific, demonstrably false, or excluded by the government contacts exception, and therefore cannot support the District Court's exercise of personal jurisdiction.

## SUMMARY OF ARGUMENT

Appellants allege that TRNC dispossessed them of rights to real property in North Cyprus, and is capable of being sued in the District of Columbia because of a supposed scheme to advertise and sell Appellants' property from TRNC's representative office in the District. While Appellants describe a theory of a case, they have not and cannot substantiate it with credible factual allegations. Appellants have, therefore, failed to meet the critical burdens to establish personal jurisdiction over TRNC here.

12

The Supreme Court has already ruled that general personal jurisdiction can only be asserted over a particular defendant when that defendant's contacts are so pervasive that it is essentially at home in the District. Appellants' novel claim that TRNC has "consented" to jurisdiction in the District of Columbia by having an office here is unsupported in law. TRNC's representative office, used to interact with the U.S. government, cannot reasonably be considered TRNC's home.

The Supreme Court has repeatedly held that specific jurisdiction applies when a claim arises out of or relates to a defendant's contacts with the forum. As the District Court recognized, Appellants' jurisdictional allegations, set against TRNC's detailed and uncontested affidavits, reveal the complete absence of a jurisdictional nexus between Appellants' causes of action and the District of Columbia. Appellants assert in conclusory and broad language that TRNC advertises and sells property from its representative office. Yet Appellants have failed to identify or describe a single transaction for any property on the island of Cyprus. One never learns who transferred what interest in what property to whom and when; who paid what to whom and when for any such property; how were Appellants' properties advertised and who saw or acted upon the advertisements. Appellants have failed to indicate with any specificity any action in the District of Columbia by TRNC that relates to any of the three Appellants' properties. At most,

they allege that they had owned property in northern Cyprus prior to the U.N. mediated division.

An assertion of personal jurisdiction requires the establishment of a *prima facie* case of jurisdiction supported by more than a series of conclusory and demonstrably false allegations. Each jurisdictional contact alleged by Appellants with respect to TRNC is excluded from consideration because it either stems from TRNC's government-related presence in the District, and / or it is directly contradicted by TRNC's uncontested affidavits. First, Appellants do not contest that the government contacts exception applies, or that TRNC's office and personnel exist in the District to interact with the U.S. government. Second, the scarce remaining contacts alleged by Appellants are directly contradicted by TRNC's three affidavits and their associated exhibits. Significantly, Appellants offer no evidence to discredit the affidavits, though they misquote and misrepresent statements made therein. These two deficiencies leave no other jurisdictional contacts within the District of Columbia alleged by Appellants.

Without any ground upon which to establish the District Court's personal jurisdiction over TRNC for their property claims, Appellants take a shotgun approach and allege seven grounds on appeal. Of these, only two were addressed by the District Court. TRNC demonstrates below that each alleged ground cannot support the exercise of specific jurisdiction because Appellants (i) have not

identified a specific transaction that gave rise to their claims, (ii) have not alleged an injury in the District, (iii) have not shown that TRNC's interest in, use, or possession of real property in the District has given rise to their claims, (iv) have not pled nationwide jurisdictional contacts that could give to jurisdiction for their claim based on the Lanham Act, (v) make only bare allegations of a conspiracy, and (vi) cannot show that TRNC has waived its right to object to personal jurisdiction by maintaining an office in the District of Columbia. Personal jurisdiction over TRNC, therefore, cannot attach.

The District Court's other rulings should similarly be upheld. Appellants fail to show that the District Court abused its discretion when it denied jurisdictional discovery and Appellants' motion for leave to file an amended complaint. Appellants copy-and-paste the District Court's legal analysis of the jurisdictional discovery issue, yet they fail to apply the law and show how the District Court erred. Similarly, Appellants fail to show why they should have been allowed to amend their complaint for a third time. Instead, they merely restate their main allegations without arguing how the proposed amendments would have been helpful.

Finally, Appellants mistakenly believe that two related cases at the District Court below that were not appealed, *Fiouris,* Case No. 10-1225 (PLF) and

*Latchford,* Case No. 12-0846, may constitute part of this appeal. However, this Court lacks jurisdiction over both.

For these reasons, this Court should affirm the District Court's ruling in its entirety.

## ARGUMENT

## I.  THE DISTRICT COURT CORRECTLY HELD THAT IT LACKS PERSONAL JURISDICTION OVER TRNC.

A district court's dismissal of a complaint for lack of personal jurisdiction is reviewed *de novo. FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008).

The District Court cannot assert general or specific personal jurisdiction over TRNC in this action because: (i) Appellants have failed to make a *prima facie* showing of jurisdictional facts that are not directly contradicted by affidavit, (ii) Appellants concede that the government contacts exception applies and, therefore, excludes most of the alleged contacts in the District of Columbia, (iii) Appellants concede that general personal jurisdiction cannot be exerted over TRNC in the District, (iv) Appellants do not allege any specific TRNC contacts in the District that gave rise to their property claims, (v) the nationwide contacts alleged are insufficient to support jurisdiction under Rule 4(k)(2), (vi) Appellants have failed to present the elements of the conspiracy theory of jurisdiction, and finally (vii) the exercise of jurisdiction in this forum would violate due process.

16

A.    **Appellants Have Failed to Make a *Prima Facie* Showing of Pertinent Jurisdictional Facts.**

The District Court's decision to dismiss this litigation for lack of personal jurisdiction five years after the filing of the original complaint was warranted because Appellants have, despite ample time and opportunity, failed to make a *prima facie* showing of pertinent jurisdictional facts related to TRNC's conduct in the District of Columbia or the United States. *See Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (requiring a prima facie showing of jurisdiction); *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir.1988). The majority of jurisdictional facts alleged by Appellants are either legal conclusions cast as factual allegations or are directly contradicted by TRNC's three affidavits, the accuracy of which Appellants have not challenged.

Appellants "have the burden to prove that jurisdiction is properly exercised" because TRNC has responded to their conclusory allegations with factual evidence rebutting their jurisdictional allegations. *Reuber v. United States,* 787 F.2d 599, 599 (D.C. Cir. 1986); *FC Inv. Grp. LC*, 529 F.3d at 1091; *Atraqchi v. Wal-Mart Stores, Inc.*, 168 F. App'x 442 (D.C. Cir. 2005) (one page order affirming dismissal for lack of jurisdiction because plaintiff failed to fulfill burden). To this end, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal

17

conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

Furthermore, the Court "need not give credence to factual allegations that are *directly contradicted by affidavit*." *Elmer v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 116, 121-22 (D.D.C. 2008) (emphasis added); *see also Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 264 (D.D.C. 2011) (a plaintiff's factual assertions "are presumed to be true unless directly contradicted by affidavit ... or other evidence."); *Novak–Canzeri v. Al Saud*, 864 F. Supp. 203, 206 (D.D.C. 1994) (citing *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990)). "Courts may consider outside evidence to make factual determinations in disposing of a motion to dismiss for lack of personal jurisdiction." *Shirlington Limousine v. San Diego Union-Tribune*, 566 F. Supp. 2d 1, 3 (D.D.C. 2008).

### 1.     Appellants Do Not Contest TRNC's Affidavits.

Crucially, Appellants do not contest the extensive factual information provided by TRNC in the two affidavits of then-TRNC Representative Hilmi Akil, (*see* Akil Aff. JA 54; Suppl. Akil Aff., JA 158), or of Izzet Zorlu (*see* Zorlu Aff., JA 102), and the exhibits attached thereto. Rather, they largely ignore them, and

18

when they do not, they badly misrepresent a selected few statements made within them or improperly attempt to shift the jurisdictional burden to TRNC to disprove their inferred and supposed jurisdictional contacts. *See* Appellants' Br. 11 (alleging without basis that Appellants have been "at a disadvantage due to TRNC's lack of transparency"). But the burden remains with Appellants. *See e.g., Reuber,* 787 F.2d at 599.

## 2. TRNC's Uncontested Affidavits Directly Contradict Appellants' Jurisdictional Allegations.

Appellants appear primarily to rely on three conclusory jurisdictional allegations that are patently false, as thoroughly demonstrated in TRNC's Motion to Dismiss and the supporting affidavits. Regarding jurisdiction, Appellants allege: (i) TRNC advertises, sells, and assists in the sale of property in North Cyrus from its its office in Washington, D.C. (*e.g.,* Appellants' Br. 12, 16); (ii) TRNC maintained an "interactive" website that has substantial visitors (*e.g., id*. at 10, 15, 14, 16); and (iii) TRNC gives its "customers" maps of North Cyprus that include for-sale properties belonging to Appellants (*e.g., id*. at 12, 16).

First, Appellants rely solely on the Akil Affidavit to support the allegation made in their Complaint that TRNC "publishes and advertises properties belonging to…plaintiffs for sale at its office in the District of Columbia," Appellants' Br. 3.

For each similar jurisdictional fact alleged, Appellants cite to paragraph 25 of the

Akil Affidavit for support. This paragraph states in its entirety:

> The number of visitors to our office who make general inquiries about the TRNC is very small, and does not exceed a handful per year. Should a visitor to our office inquire about purchasing property in the TRNC, I or a member of my staff advise him or her to hire his or her own attorney to assist in the process. This office does not provide referrals to attorneys. This office does make maps of the TRNC available to visitors and keeps several northern Cyprus related tourism magazines on the coffee table in the office's reception area.

Akil Aff. ¶ 25, JA 63.[8] Appellants deceptively mischaracterize this as an admission

that (i) "customers/visitors patronize" the TRNC office, Appellants' Br. 16, (citing

Akil Aff. ¶ 23, 25, 31, JA 63, 65); (ii) "[t]hese customers …are provided

information about purchasing property," *id.* at 16 (citing Akil Aff. ¶ 23, 25, 31, JA

63, 65); and (iii) "Mr. Akil admits that visitors to the DC office seek to purchase

property that would presumably include property owned by displaced Greek

Cypriots … that the TRNC will issue title to property to any investor, and provides

them the forms to complete to obtain the TRNC titled property." *Id.* at 16-17

(citing Akil Aff. ¶ 25, JA 63). Meanwhile, Appellants cannot identified a single

person who visited the TRNC office seeking to purchase "property owned by

---

[8] Appellants also curiously rely on paragraph 23, which states that the TRNC Representative Office does not solicit or obtain funds for advertising, marketing, or selling properties in TRNC. Akil Aff. ¶ 23, JA 63. Their reference to paragraph 31 is equally puzzling as it merely states that Mr. Akil, "surmise[s] that the Plaintiffs have mistakenly drawn inferences from [the alleged TRNC] website, which form the basis for several allegations in their Amended Complaint." *Id.* ¶ 31, JA 65.

displaced Greek Cypriots," let alone property belonging to one of the Appellants, or who was provided the hypothetical property purchase forms. Appellants have chosen to intentionally reword what is otherwise a very simple sworn statement, rather than to contest it.

Appellants also ignore and otherwise fail to contest the abundantly clear statement that the TRNC office does not "advertise, finance, or sell properties…or in any way assist in such matters," Akil. Aff. ¶ 22, JA 63, nor does it "facilitate the sale of any property in TRNC." *Id.* at ¶ 24, JA 63. Rather, Appellants simply repeat their Complaint's original assertion that "TRNC publishes and advertises properties belonging to displaced Greek Cypriots consisting of the plaintiffs and the Class for sale at its office in the District of Columbia." Appellants' Br. 3.

They speculate further, though without any support elsewhere in their pleadings, that (i) "the property purchase inquiries made to the TRNC's office in the District of Columbia also suggest that TRNC may derive substantial revenue from services rendered in D.C.," Appellants' Br. 10; (ii) "the fact that customer visitors [sic] do visit the office…demonstrates that TRNC regularly does or solicits business," *id.*, and (iii) TRNC "provides visitors…with maps to identify…for sale properties," *id.* at 11 (citing Akil Aff. and Suppl. Akil Aff. (Appellants do not provide pinpoint citations)). But mere speculation that something may be occurring does not constitute a *prima facie* showing of jurisdictional facts, especially in the

21

face of sworn testimony to the contrary. *See Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 22 (D.D.C. 2014) ("the court need not treat all of the plaintiff's allegations as true when deciding a personal jurisdiction question."); *Elmer,* 533 F. Supp. 2d at 121-22 (the Court "need not give credence to factual allegations that are directly contradicted by affidavit.").

Second, Appellants repeatedly assert that TRNC "maintained and operated" the website trncwashdc.org and that this website was "interactive," included "forms," and "had substantial visitors." Appellants' Br. 14, 15 (citing Akil Aff. and Suppl. Akil Aff. (Appellants do not provide pinpoint citations)). They further allege that the website was "dedicated to business visitors…to further the commercial activities of the TRNC that includes [sic]…purchasing properties, [and was] directed to individuals in the District of Columbia." Appellants' Br. 16 (citing Akil Aff. ¶¶ 16, 23, 25, 31, JA 63, 65).

These allegations are likewise fully contradicted by the Akil Affidavits. *See* Akil Aff. ¶¶ 28-32, JA 64-66 (explaining that the website was not interactive and that TRNC did not have any association with the website since 2005); Suppl. Akil Aff. ¶¶ 2-6, JA 160-62. Moreover, as the District Court correctly highlighted, "[t]he complaint and the plaintiffs' submissions are devoid of any allegation that District residents actually have accessed the website," Op., JA 295, which remains true of Appellants submissions on appeal. Similarly, Appellants fail completely to

support their speculative claim that the website had "substantial visitors."

In an effort to substantiate their claim that the trncwashdc.org website was interactive and included forms, Appellants provide purported screenshots of the website. Opp. to Mot. Ex. 5, JA 16-24. However, appended to them without any further explanation are portions of a *different* website, trncproperty.eu. *Id*., JA 19-24. Whether this is an innocent error or intentional deception, Appellants still fail to contradict in any way Mr. Akil's sworn statement showing that the trncporperty.eu website was never maintained by the TRNC government and that it has no meaningful connection to the District, other than being merely accessible. Akil Aff. ¶ 33, JA 66 (stating that the trncproperty.eu website is "neither owned by, endorsed by, or bears any relationship with the TRNC government or my office"). Furthermore, Appellants have never addressed the sworn statement asserting that TRNC had ceased being associated in any way with the trncwashdc.org website some four years prior to the initiation of Appellants' lawsuit. *Id.* ¶ 28, JA 64; Zorlu Aff. ¶¶ 1, 5, JA 103, 104.

Third, while Appellants find great import in the availability of maps of North Cyprus at the TRNC office, their focus is unjustified. Appellants' Br. 11 (alleging that TRNC gives its "customers" "maps to identify for sale properties, which actually belong to the plaintiffs."); *id*. at 15, 17-18. Appellants' sole citation in support of this allegation is to paragraph 25 of the Akil Affidavit, which simply

states in relevant part: "The office does make maps of the TRNC available to visitors." JA 63. Appellants elaborately contort TRNC's act of making maps of North Cyprus available to its handful of visitors into TRNC providing "customers" with maps that identify Appellants' property as "for sale," Appellants' Br. at 11, without offering any support for their assertion. But, as the Supplemental Akil Affidavit makes clear, the maps "do not contain advertising of any sort," rather, they "contain a depiction of the roads of the TRNC overlaid with a simple relief map." Suppl. Akil Aff. ¶ 7, JA 104. Further, the maps are not sold, visitors are not encouraged to take them, and the TRNC office does not advertise to the public that these maps are available. *Id*. TRNC has been clear: "[n]either the TRNC nor its Representative Office derive commercial income of any kind from its activities in Washington, D.C.," and thus there are no so-called customers. Akil Aff. ¶ 21, JA 63. In the face of TRNC's repeated and explicit declaration that its representative office does not advertise or sell properties or derive commercial income from its activities here, and the Appellants' failure to offer anything other than speculative and conclusory assertions, Appellants' map-related allegations fail as well. *Id*. at ¶¶ 21, 22, 24, JA 63; Suppl. Akil Affid. ¶ 7, JA 104.

At best, Appellants' mischaracterization or evasion of parts of the record below that harm their jurisdictional arguments could be seen as careless; yet, it can also be seen as intentionally deceitful. Regardless, nothing in Appellants' opening

brief or the record below legitimately contradicts the ample information provided by TRNC, which supports its arguments against personal jurisdiction. The primary jurisdictional facts Appellants allege are plainly contradicted by the very affidavits upon which they exclusively rely. The remaining jurisdictional contacts alleged are either excluded under the government contacts exception, or occurred outside this forum.

**B.    TRNC's Contacts Through Its Washington, D.C. Representative Office Are Excluded From Jurisdictional Consideration.**

The Court below correctly held that all jurisdictional contacts alleged in connection to TRNC's representative office in the District of Columbia are barred from jurisdictional consideration under the government contacts exception. Op., JA 295 (holding that TRNC's "contacts through its D.C. office," including staffing and banking, "are properly excluded."). Significantly, Appellants agree with this ruling and neither contest the applicability of the exception nor the reasoning of the District Court in this regard. *See* Appellants' Br. 8, n. 12, 13, 14, 16, 17, 27 (introducing jurisdictional facts as "unrelated to U.S. government contacts"). Nevertheless, they reassert the same continuous office-related jurisdictional facts, that TRNC:

> "Hir[es] employees from the US and abroad as representatives or staff to the District of Columbia, leas[es] office space, hir[es] and pay[s] lawyers, [uses] letterhead, [an] interactive website, phone, email, facsimiles, publishing and distributing maps (with commercial information including hotels) and a DC postal address,…leas[es] or

own[es] offices space [sic], [and] appoint[s] TRNC representative [sic] who are US business owners.

Appellants' Br. 14.

The government contacts exception "denies personal jurisdiction over non-residents whose only contact with this jurisdiction involves uniquely governmental activities." *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 786–87 (D.C. Cir.1983). The exception provides that "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Envtl Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc*., 355 A.2d 808, 813 (D.C. 1976) (*en banc*). "Indeed, D.C. Courts have long carved out a 'government contacts' exception that applies when non-resident corporations *keep an office in the District* for the purpose of maintaining contact with Congress and governmental agencies." *Alkanani*, 976 F. Supp. 2d at 25 (internal citations omitted) (emphasis added); *see e.g., Fandel v. Arabian Am. Oil Co.,* 345 F.2d 87, 88–89 (D.C. Cir. 1965) (applying the government contacts exception to a Saudi Arabian oil company's District of Columbia office); *Sierra Club v. Tenn. Valley Auth.,* 905 F. Supp. 2d 356, 362 (D.D.C. 2012) (noting exception applied to offices maintained for purpose of government contacts).

Ignoring the website reference, addressed above (*see supra* Sect. I.A.2), the office-related contacts Appellants allege are directly related to TRNC's purpose of

interacting with the U.S. federal government.[9] This is amply demonstrated in the affidavits TRNC supplied to the District Court. *Cf*. Op., JA 295; *see* Akil Aff. ¶¶ 15-27, JA 61-64 (attesting to the TRNC Office's government-related activities and purposes). The TRNC representative office in the District exists to interact with the United States federal government. Akil Aff. ¶ 15, JA 61. The TRNC Representative's purposes are to gather information on legislation and U.S. policies that may impact TRNC, as well as informing and educating the U.S. government on its position vis-à-vis such policies, and on matters concerning North Cyprus. *Id*. All expenditures, detailed in the office's foreign agent registration reports filed with the Department of Justice, demonstrate their unambiguous relationship to this end. TRNC's FARA Reports, TRNC Mot. Ex. 5 ("FARA Reports"), JA 75-81. TRNC also produced documentation from the U.S. Department of State regarding the TRNC Representative's status and purpose, affirming that Mr. Akil "interacts with Department of State officials on a *regular, long-term basis*." Letter from U.S. Dep't of State, JA 150 (emphasis added).[10]

---

[9] Appellants' bald allegations that TRNC "references [itself] as an embassy, government, 'defacto' state or republic," Appellants' Br. at 13, are false and contradicted by affidavit as is Mr. Akil's alleged reference to himself as a representative and not an ambassador. *See* Akil Aff. ¶¶ 16, 17, JA 61, 62 ("I do not hold myself out as an ambassador in the United States … . The only TRNC mission designated as an 'embassy' is located in Ankara, Turkey").

[10] Most recently, on April 30, 2015, Secretary of State John Kerry called the newly elected TRNC President, Mustafa Akinci, to congratulate him and to reiterate the United States' support for the negotiation process between the two communities.

27

Similar letters are also given to TRNC staff working in Washington. Akil Aff. ¶ 14, JA 61. These facts unambiguously demonstrate TRNC's uniquely governmental activities in the District.

In line with this Circuit's practice of excluding contacts with the federal government from a personal jurisdiction analysis, the contacts that directly flow from TRNC's maintenance of its representative office cannot serve as bases upon which jurisdiction may be predicated. *Fandel,* 345 F.2d at 88.

### C. General Personal Jurisdiction Over TRNC Does Not Exist in the District of Columbia Because TRNC is Neither "At Home" Here, Nor Has It "Consented" to Personal Jurisdiction Here.

Appellants concede that District of Columbia courts do not have general jurisdiction over TRNC. Appellants' Br. 7-8 ("At this point, due to changes in the law …specific jurisdiction is the sole focus of this appeal"). Nonetheless, Appellants make an implied argument for general jurisdiction, styled as "consent jurisdiction." They allege that that TRNC's maintenance of an office in the District is "constructive if not expressed consent to [] personal jurisdiction." *Id*. at 18-19 (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)).

First, "consent jurisdiction" does not exist here because TRNC has not "intentionally waived" its objection to jurisdiction, nor is it estopped from doing

U.S. Department of State, Daily Press Briefing (Apr. 30, 2015), *available at:* http://www.state.gov/r/pa/prs/dpb/2015/04/241347.htm (last visited May 4, 2015).

so. *Ins. Corp. of Ireland,* 456 U.S. at 704 (describing legal arrangements that have been taken to represent express or implied consent to personal jurisdiction). TRNC has properly objected to the exercise of personal jurisdiction in this lawsuit. Second, a court may assert general jurisdiction over a foreign defendant "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum state.'" *Daimler AG v. Bauman,* 134 S. Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851 (2011)). It is not enough to simply have constant and systematic contacts. *Id.* The District Court correctly noted that Appellants' own allegations are premised on TRNC's control over their property in North Cyprus, thereby "indicat[ing] that the TRNC is 'at home' in northern Cyprus, as its name suggests." Op., JA 292. Appellants have fallen "woefully short of demonstrating" otherwise. *Id.* Whether the District Court may assert personal jurisdiction over the TRNC is answered by the District's long arm statute.

> ### D. Specific Personal Jurisdiction Over TRNC Does Not Exist Under the District's Long-Arm Statute Because None of Appellants' Claims Arise From TRNC's Contacts in the District.

Even if the jurisdictional facts alleged by Appellants were not excluded from consideration by the government contacts exception, contradiction by affidavit, or lack of contact with the District, none of the contacts alleged meets the

29

requirements of the District's long-arm statutes, D.C. Code § 13-423(a)(1), (3)-(5), because none gave rise to Appellants' claims.

Appellants' Complaint alleged that the District Court has specific personal jurisdiction over TRNC under the District's long-arm statute based on business transactions, D.C. Code § 13–423 (a)(1). On appeal, they assert three additional bases, each requiring injury within the District, § 13-423(a)(3)-(5).[11] Appellants' Br. 8-11. The District's long arm statute authorizes a court to exercise specific jurisdiction over a non-resident defendant who "acts directly or by an agent, as to a claim for relief *arising from* the person's ...

> (1)  transacting any business in the District of Columbia;
> …
> (3)  causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4)  causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia …;
> (5)  having an interest in, using, or possessing real property in the District of Columbia.

D.C. Code § 13–423(a).

On two recent occasions, the Supreme Court had the opportunity to distinguish between general and specific jurisdiction. *See Daimler AG v. Bauman,* 134 S. Ct. 746, 751 (2014), *Goodyear Dunlop Tire Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851 (2011).  In *Daimler*, the Court explained that

---

[11] The Court should not consider these bases alleged for the first time on appeal. *See infra* Sect. II.C.

> *International Shoe* [*Co. v. Washington,* 326 U.S. 310], presaged the recognition of two personal jurisdiction categories: One category, today called 'specific jurisdiction,' [] encompasses cases in which the suit 'arise[s] out of or relate[s] to the defendant's contacts with the forum.

134 S. Ct. 746, 748-49 (citing *Goodyear,* 131 S. Ct. 2853; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, n. 8 (1984). In contrast, general personal jurisdiction encompasses cases in which the contacts "'render [it] essentially at home' in the [forum]," and are "of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* at 749 (citing *Goodyear*, 131 S. Ct. at 2851; *Int'l Shoe*, 326 U.S., at 318).  Thus, in order to assert specific personal jurisdiction over TRNC in the District, Appellants must allege specific contacts in the District that gave rise to their real property claims in Cyprus.  They have not.

### 1.    Jurisdiction Cannot Be Exercised Under D.C. Code § 13–423(a)(1) Because Appellants' Property Claims Do Not Arise From Any of TRNC's Transactions in the District.

To meet the requirements of specific personal jurisdiction under the "transacting any business" provision of the District's long-arm statute, a plaintiff must prove that (1) the defendant transacted business in the District and (2) the claim arose from the business transacted. *Id.* The exercise of jurisdiction under D.C. Code § 13-423(a)(1) is limited to "claims arising from the *particular transaction of business*" by TRNC in the District of Columbia. *World Wide*

*Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1168 (D.C. Cir. 2002)

(emphasis added); *Naartex*, 722 F.2d at 785–86. *See* D.C. Code § 13-423(b).

Satisfaction of this provision "requires a *significant connection* between the claim

and alleged contact with the forum." *Orellana v. CropLife Int'l*, 740 F. Supp. 2d

33, 38 (D.D.C. 2010) (citing *World Wide Minerals Ltd. v. Kazakhstan,* 116 F.

Supp. 2d 98, 106 (D.D.C. 2000)) (emphasis added)*.* At the very least, there must be

"a nexus between a foreign corporation's particular contact with the District of

Columbia and the claim that the plaintiff asserts." *Alkanani*, 976 F. Supp. 2d at 21.

Reinforcing the Supreme Court's dichotomy between general and specific

jurisdiction, the District's long-arm statute permit jurisdiction over a defendant

generally for "doing business" in the district, § 13-334(a), or specifically for a

"business transaction" that gives rise to a claim, 13-423(a)(1). Appellants

apparently have conflated the two. Prior to writing for the unanimous Supreme

Court in *Daimler*, then Circuit Judge Ginsberg, explained that "[d]oing business" is

a term that "signals local activity sufficient to support all-purpose (general)

jurisdiction over a defendant." *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987)

(distinguishing the requirements of the District's long arm statutes). By contrast,

"[t]ransacting business" is a term "invoked as a basis for specific adjudicatory

authority over claims relating to the very business transacted." *Id.*

32

Considering the jurisdictional contacts pled in Appellants' Complaint and opening brief, it is challenging to identify what business transactions are alleged to have given rise to Appellants' claims. They allege numerous contacts, *see supra*, Jurisdictional Facts Pled, but fail to describe with particularity how their property claims arose from any of these contacts.  Thus, even in the absence of the government contacts exception, *see supra* Sect. I.A-B, they still cannot satisfy the requirements of § 13-423(a)(1).[12]

Considering the jurisdictional facts pled in turn, Appellants first allege generally that TRNC hires employees, leases office space, uses letterhead, a phone line, etc. in order to maintain an office in the District. Appellants' Br. 14. They further allege that TRNC pays for these services through alleged accounts with the HSBC defendants. *Id.* at 14-15. As explained above, these could be considered examples of "doing business," but not examples of specific "business transactions" for purposes of § 13-423(a)(1). *See Supra* Sect. I. D. 1.A; *Carr*, 814 F.2d at 763. Regardless, they are excluded under the government contacts exception. *Supra* Sect. I, B, *accord* Op., JA 294 (holding that the leasing, staffing, and banking in connection with the office are barred from consideration under a §13-423(a)(1) analysis pursuant to the government contacts exception). Further, Appellants'

---

[12] In fact, the only "specific business transaction" alleged in the pleadings is that TRNC "paid for the construction…[and] maintenance" of the trncwashdc.org website. Appellants' Br. 15.  But this, too, is contradicted by the Akil Aff. ¶¶ 28, 30, JA 64, 65.

assertion that TRNC uses the office to advertise and sell Appellants' property is contradicted by the uncontested Akil Affidavits. *See Supra* Sect. I.A.1.

Appellants allege that Mr. Akil "admits that visitors to the DC Office seek to purchase property that would presumably include property owned by displaced Greek Cypriots…and that the TRNC will issue title to property to any investor, and provides them the forms to complete to obtain the TRNC titled property." Appellants' Br. 16-17 (citing Akil Aff. ¶ 25, JA 63). These and other similar allegations cannot support jurisdiction under § 13-423(a)(1) because they are contradicted by the very affidavit on which they rely. *See supra* Sect. I.A.2; Akil Aff. ¶ 21-25, JA 63. Again, Appellants have provided nothing to eliminate the contradictions or to raise doubt as to the credibility of TRNC's affidavits.

Appellants further allege that TRNC "pays to create manufacture, print and distribute tourist maps." Appellants' Br. 15. Here, Appellants allege a nexus between TRNC's payment for maps and Appellants' property claims by asserting that the maps "identify property belonging to the TRNC to the detriment of the Plaintiffs." *Id.* This confusing allegation does not satisfy the requirement for jurisdiction under § 13-423(a)(1) because it is contradicted by affidavit. *See supra* Sect. I.A.2; Suppl. Akil Aff. ¶ 7, JA 104 (stating that the maps contain depiction of roads on a simple relief map and are devoid of advertising). Further, the mere purchase of touristic maps for the office, a purchase that is not alleged to have

34

occurred in the District, cannot reasonably be inferred to have given rise to, or share any relationship with, Appellants' property claims. TRNC could not reasonably expect to be haled into court in a case alleging interference with particular Appellants' property merely for making available an ordinary map that shows the entirety of the geography that it claims to govern. *See infra*, Sect. I, E. Finally, any actions to produce and make available the maps in the District would also be excluded under the government contacts exception because the maps are part of the function of the TRNC office. S*ee supra*, Sect. I, B.

Appellants allege that TRNC "transfers monies…that paid for the construction deployment, maintenance and operation of the trncwashdc.org website." Appellants' Br. 16. This allegation does not satisfy the requirement for jurisdiction under §14-423(a)(1) because the three Appellants' property claims are not alleged to arise from the contested website. Appellants have not identified any business transaction completed on the website that gave rise to their claims, nor can they. *See* §14-423(a). All claims that the website was interactive and that it included forms and information on purchasing property is directly contradicted by both Akil affidavits. *See supra* Sect. I.A.2. Simple maintenance of an informational website would otherwise be barred from consideration under the government contacts exception. *See supra*, Sect. I.B.

Finally, Appellants allege that TRNC "submit[s] letters to DC newspapers" and "hir[es] and pay[s] lawyers." Appellants' Br. 14. But again, Appellants fail to describe a specific transaction, or how these acts give rise to Appellants' claims for interference with real property in North Cyprus. Lacking this nexus, § 13-423(a)(1) cannot be satisfied.

Because Appellants do not distinguish between "transacting business" and "doing business" under the District's long-arm statute, and because none of Appellants' property claims can reasonably be said to have arisen from TRNC's contacts in the District, specific personal jurisdiction cannot be exercised over TRNC. *See Helicopteros,* 466 U.S. at 414, n. 8 (discussing specific jurisdiction)

### 2. Jurisdiction Cannot Be Exercised Under D.C. Code §§ 13-423(a)(3)-(4) Because Appellants Do Not Allege Any Injury in the District of Columbia.

Though not raised in their Complaint, Appellants' now assert that this Court has specific personal jurisdiction over TRNC for its property claims arising from TRNC "causing tortious injury in the District of Columbia," pursuant to D.C. Code §§ 13-423(a)(3) and (4). While §13-423(a)(3) pertains to a defendant's acts within the District and § 423(a)(4) pertains to those outside, an injury in the District is indisputably necessary to both. *Carr,* 814 F.2d at 761. Because Appellants only allege property-related injuries in North Cyprus, the Court cannot exercise specific

personal jurisdiction over TRNC pursuant to these subsections. *Id.* (noting the requirement of a tortious injury in the District under §§ 13- 423(a)(3)-(4)).

### 3. Jurisdiction Cannot Be Exercised Under D.C. Code § 13-423(a)(5) Because Appellants' Property Claims Do Not Arise From TRNC's Lease of Office Space in the District of Columbia.

Finally, Appellants allege jurisdiction over TRNC pursuant to § 13-423(a)(5) on the ground that TRNC "leases, if not owns, the office space where it is located in D.C." Appellants' Br. 11. For jurisdiction to be exercised under this provision, the claim asserted must "arise from" TRNC having an interest in property in the District of Columbia. § 13-423(a)(5). Appellants have failed to allege facts linking their claims for dispossession of property in North Cyprus to TRNC's lease of an office in the District. Moreover, the lease is otherwise excludable under the government contacts exception, *see supra* Sect. I.B, and any claims that TRNC advertises or sells property from this office are contradicted by the Akil Affidavit. *See supra* Sect. I.A.2.

### E. TRNC's Alleged Nationwide Contacts Do Not Satisfy Federal Rule 4(k)(2)'s Requirements For Federal Long-Arm Personal Jurisdiction.

Appellants' assertion that jurisdiction is proper under the federal long-arm statute, Federal Rule 4(k)(2), must be rejected because Appellants do not allege, nor can they, that their claims against TRNC arise out of a violation of the only federal law they cite: the Lanham Act, 15 U.S.C. § 1125(a). And even if a

plausible Lanham Act argument could be made, Appellants have not demonstrated that TRNC's nationwide contacts with the United States are sufficient to exercise either general or specific jurisdiction over it.

Federal Rule 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons ... is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

## 1.  Appellants' Claims Do Not Arise Under Federal Law.

First, Appellants' property claims cannot plausibly be said to arise under federal law. In fact, Appellants do not even allege that they do. The gravamen of Appellants' lawsuit is the alleged dispossession of property on the island of Cyprus. However, the sole federal claim alleged in the Complaint—though not identified in Appellants' opening brief—is a violation of the Lanham Act, 15 U.S.C. § 1125(a). Compl. ¶¶ 107-111, JA 49-50. The Lanham Act, " provides a private right of action against a merchant's misleading description of its product either by itself or when compared to its competitor's product." *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194 (D.D.C. 1989), rev'd in part on other grounds*, 913 F.2d 958 (D.C. Cir.1990) (emphasis added)*, accord Podiatrist Ass'n v. La Cruz Azul de P.R., Inc.*, 332 F.3d 6, 19 (1st Cir. 2003) (clarifying that a Lanham Act claim must involve a representation made by a "*competitor of the plaintiff in some line of trade or commerce*.") (emphasis added). To support a

claim under this statute, Appellants must show that (i) TRNC engaged in false or misleading advertising that actually deceived or could have deceived a substantial segment of the audience, (ii) the deceptive or misleading portions of the advertisement were material, (iii) TRNC caused the advertised goods to enter interstate commerce, and (iv) Appellants have been or are likely to be injured. *ALPO*, 720 F. Supp. at 213.

None of the elements are met. One need not look beyond the fact that Appellants point to no advertisement by TRNC, material or otherwise. Further, Appellants' claims for interference with their property rights do not result from any sort of competitive injury.  Moreover, Appellants fail to distinguish among the various Appellees in their Lanham Act argument, referring only generally to "defendants." Compl. ¶¶ 24-26, JA 34. Thus, the Lanham Act cannot plausibly be used by Appellants to support a claim for jurisdiction under Rule 4(k)(2). The Supreme Court has repeatedly affirmed that "[A] claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 [] may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'wholly insubstantial and frivolous.'" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006); *Bailey v. Patterson*, 369 U.S. 31, 33 (1962) (courts lack jurisdiction over "wholly insubstantial" claims). The same logic applies here. Appellants' Lanham Act claim is wholly frivolous and cannot be said to sustain personal jurisdiction over TRNC.

### 2.     TRNC's Few Alleged Nationwide Contacts Do Not Support General or Specific Personal Jurisdiction.

Appellants allege various nationwide contacts including: (i) the TRNC Representative has a residence in the state of Maryland, (ii) TRNC has bank accounts with HSBC USA, (iii) TRNC hired a website designer in Towson, Maryland, (iv) TRNC has an office in New York, and (v) TRNC hired an attorney in New Jersey. Appellants' Br. 21. Appellants also variously allege that TRNC was cited in a footnote of a Small Business Administration printed pamphlet, *id*. at 14, and has "authorized a West Coast representative," *id*. at 15. None of these contacts are sufficient to support general or specific jurisdiction over TRNC.

Considering general personal jurisdiction first, Appellants do not contest that District of Columbia courts lack general personal jurisdiction over TRNC. Appellants' Br. 8. And the handful of sporadic TRNC contacts alleged outside the District are not "so constant and pervasive 'as to render [it] essentially at home" in the United States.'" *Daimler*, 134 S. Ct. at 751, 761 (quoting *Goodyear*, 131 S. Ct. at 2851); *see Supra,* Sect. I.C. (discussing general jurisdiction).

Turning to specific personal jurisdiction, Appellants do not allege that their federal Lanham Act claims, or even their state law property claims, arise from any of the nationwide contacts alleged. *Accord* Op., JA 297 (Appellants' "claims do not arise from these [nationwide] contacts."). If such a nexus exists, Appellants have not pled so. *See Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d

415, 424 (D.C. Cir.1991) ("[Plaintiffs] have the burden of proving personal jurisdiction.").

### F. Conspiracy Theory of Jurisdiction Cannot Apply Because Appellants' Few Allegations of Conspiracy Are Insufficient.

Appellants also argue, for the first time on appeal, that the District Court has personal jurisdiction over TRNC under the so-called conspiracy theory of jurisdiction. As a preliminary matter, arguments not raised below should not be considered by this Court. *See infra* Sect. II.C.

Appellants argue that "acts within the forum of one co-conspirator in furtherance of an alleged conspiracy subject a non-resident co-conspirator to personal jurisdiction." Appellants' Br. 17 (citing *Mandelkorn v. Patrick*, 359 F. Supp. 692, 696 (D.D.C. 1993)). Citing to this single case is harmful to Appellants' theory, as the district court in *Mandelkorn* also held that the "mere presence of one co-conspirator within the jurisdiction does not create jurisdiction over all alleged co-conspirators." *Id*. Appellants omit this critical point and fail to address it. Furthermore, the *Mandelkorn* court stated that if the alleged co-conspirators had "denied the allegations of conspiracy [or] their alleged roles therein," the theory would not apply. *Id.* at 695.

This Court has concluded that "the 'bare allegation' of conspiracy or agency is insufficient to establish personal jurisdiction." *First Chicago Int'l*, 836 F.2d at 1379. As with their other jurisdictional arguments, Appellants have merely a

theory of a case, one that has not been supported by uncontradicted factual allegations. By failing to describe even a single transaction concerning a single piece of property belonging to any of the Appellants and involving an identifiable HSBC bank account, Appellants have failed to allege a conspiracy because they have not alleged an overt act that may have occurred in the District or elsewhere in furtherance of the alleged conspiracy. TRNC, on the other hand, has repeatedly denied all allegations of conspiracy and provided its own coherent recitation of the facts. *See* Akil Aff. ¶¶ 21, 22, 23, 24, 26, 27, JA 63-64. Appellants cannot establish jurisdiction over TRNC based merely on supposition and speculation; thus Appellants' conspiracy theory of jurisdiction must also be rejected. *See Kowal,* 16 F.3d at 1276  ("the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.").

### G. Exercising Jurisdiction Over TRNC Based on the Facts Alleged Would Violate Due Process Because TRNC Could Not Reasonably Anticipate Being Haled into District of Columbia Courts.

Appellants' Complaint was properly dismissed because TRNC's conduct and connection with the District are not such that TRNC could "reasonably anticipate being haled into Court [in the District of Columbia]." *World–Wide Volkswagen Corp v. Woodson,* 444 U.S. 286, 297 (1980). The Supreme Court's due process standards "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contact." *Geier v.*

42

*Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 32 (D.D.C. 2013);

*Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985). Each of the contacts alleged

in relation to Appellants' claims are exactly the random and attenuated allegations

the standard is intended to protect against.

## II.   APPELLANTS' REFERENCES TO (A) CLAIMS MADE IN THEIR PROPOSED THIRD AMENDED COMPLAINT, (B) RELATED CASES NOT APPEALED, AND (C) NEW ARGUMENTS SHOULD BE IGNORED.

### A.   Appellants' References to Claims Made in their Proposed Third Amended Complaint, Which The District Court Declared Futile and Did Not Accept, Should be Ignored.

This appeal is taken from the District Court's Order granting TRNC's

Motion to Dismiss Second Appellants' Amended Complaint. Appellants' repeated

references to their proposed third amended complaint must be ignored because

they were never accepted by the District Court.[13]

The District Court denied Appellants' Motion for Leave to File a Third

Amended Complaint [Dist. Ct. Dkt. No.29], concluding that the proposed third

amended complaint would "cure none of the jurisdictional defects regarding the

TRNC," and "would not alter [the] Court's analysis in any way, and thus would be

futile." Op., JA 305 (citing *Sierra Club v. U.S. Army Corps. of Eng'rs*, 2014 WL

4066256, at *5 n.5 (D.D.C. Aug. 18, 2014)). Since this appeal was taken from the

---

[13] In their Opening Brief, Appellants refer to their proposed third amended complaint as the "TAC."

District Court's order granting TRNC's motion to dismiss the second amended

Complaint, while Appellants may challenge the District Court's denial of their

motion for leave amend, this Court should ignore references to allegations

exclusive to that complaint because the District Court never accepted them.

**B.    This Court Lacks Jurisdiction to Consider the *Fiouris* and *Latchford* Cases Because They Were Not Appealed.**

Appellants wrongly contend that the rulings under review by this Court

include the District Court's orders dismissing the following related cases below:

*Latchford, et al. v. Turkish Republic of Northern Cyprus, et al.,* Case No. 12-0846

(PLF) (D.D.C. Oct. 31, 2014) and *Fiouris, et al. v. Turkish Cypriot Community, et

al.,* Case No. 10-1225 (PLF) (D.D.C. Oct. 31, 2014). Neither of these cases has

been nor can now be appealed.

The District Court dismissed *Latchford* and *Fiouris* on October 31, 2014.

Appellants failed to file a notice of appeal for either case before 30 days elapsed on

December 1, 2014. Instead, on that day, in a footnote to an emergency motion to

this Court seeking to extend the time to file initial submissions in this *Toumazou*

appeal, Appellants' counsel requested that *Fiouris* and *Latchford* "be included for

purposes of this court's briefing schedule and initial submissions in this matter,"

and that "Appellant's [sic] will file an amended notice of appeal to this effect."

D.C. Cir. Dkt. No. 1524845. This is not the notice required by the Federal Rules.

Parties are accorded thirty days after the entry of a district court's final

44

judgment or order to note an appeal, Fed. R. App. P. 4(a)(1)(A), unless the district court extends the appeal period under Fed. R. App. P. 4(a)(5), or reopens the appeal period under Fed. R. App. P. 4(a)(6). *See also* Fed. R. App. P. 26(b)(1) (prohibiting the extension of time within which to file a notice of appeal). Neither situation applies here. "[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell,* 551 U.S. 205, 214 (2007). It has been 195 days since *Fiouris* and *Latchford* were dismissed with prejudice. As neither case has been nor can now be properly appealed, they should not be considered together with this appeal in any manner and this Court lacks jurisdiction to entertain them.

###     C.     Appellants' Arguments Raised For The First Time on Appeal Should Be Ignored By This Court.

Appellants put forth several new arguments on appeal that are not subject to the final order presently on appeal: (i) Appellants allege three additional bases for specific personal jurisdiction under D.C. Code § 13-423(a), Appellants' Br. 8; (ii) they allege that the Court has personal jurisdiction over TRNC based on a "conspiracy theory of jurisdiction," *id.* at 16-18; and (iii) and finally, they also allege that the Court has personal jurisdiction over TRNC because TRNC has

"consented to suit in the forum state," *id.* at 18.[14]

In order to preserve a claim of error on appeal, "a party must raise the issue before the trial court." *U.S. v. Gewin*, 759 F.3d 72, 78 (D.C. Cir. 2014) (*quoting Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 436 (D.C. Cir. 2010)). Even though appellate courts may reach arguments not presented to the district court, this discretion is exercised "only under exceptional circumstances." *Nat'l R.R. Passenger Corp.*, 776 F.3d at 16. Such situations may include "cases involving uncertainty in the law; novel, important, and recurring questions of federal law; intervening change in the law; and extraordinary situations with the potential miscarriages of justice." *Id.* (citing *Flynn v. C.I.R.*, 269 F.3d 1064, 1068-69 (D.C. Cir. 2001).

Because none of Appellants' new arguments concern recurring questions of federal law, intervening change or uncertain questions in the law, or represent extraordinary situations with the potential for injustice, they should be ignored.

## III.    THE DISTRICT COURT PROPERLY DENIED JURISDICTIONAL DISCOVERY.

A District Court's denial of jurisdictional discovery is reviewed for abuse of discretion. *Williams v. Romarm, SA,* 765 F.3d 777, 786 (D.C. Cir. 2014) (citing *FC Inv. Grp. LC*, 529 F.3d at 1091)). It is within a district court's discretion to deny

---

[14] Appellants also argue in a footnote that filing a motion to amend case caption constitutes "a waiver of personal jurisdiction," Appellants' Br. 12, n. 14, an argument that does not merit a response.

jurisdictional discovery "in the absence of some specific indication regarding what facts additional discovery could produce." *Al Magaleh v. Hagel*, 738 F.3d 312, 325-26 (D.C. Cir. 2013). Therefore, Appellants "must demonstrate with plausible factual support amounting to more than speculation or conclusory statements that discovery will uncover sufficient evidence demonstrate the defendant's ties to the forum." *Simon v. Republic of Hungary*, 37 F. Supp. 3d 381, 438 (D.D.C. 2014).

Appellants argue that the District Court abused its discretion because "it disregarded alleged contacts demonstrating a good faith basis existed." Appellants' Br. 26. Appellants provide as support their obvious mischaracterizations of affidavits provided by TRNC. *See supra* Sect. I.A.2. First, they argue that a good faith basis exists that discovery will help establish personal jurisdiction over TRNC because TRNC "*according to Mr. Akil* hired an independent contractor allegedly from Maryland to create the website and host the content for its office located in the District of Columbia, which content [sic] includes buying property belonging to displaced Greek Cypriots which consists of the Plaintiffs and the Class." Appellants' Br. 26. (emphasis added). Second, without citation to the record, Appellants assert that TRNC "admits that some of the members of the public presumably from the District of Columbia seek to purchase property that again is not a government contact." Appellants' Br. 26. Surely Appellants must know, with Mr. Akil's affidavits at their disposal, that Mr. Akil never said the foregoing. *See*

Akil Aff., JA 54; Suppl. Akil Aff., JA 102. These assertions are incorrect and
deceptive. *See supra Sect. I.A.2;* Akil Aff. ¶ 25, JA 63 ("The number of visitors to
our office who make *general inquiries* about the TRNC is very small, and does not
exceed a handful per year.") (emphasis added). Further to the contrary, Mr. Akil
specifically stated that the website did not contain information regarding property
sales, let alone sales of Appellants' property. *See supra Sect. I.A.2*; Akil Aff. ¶ 29,
JA 65.

These misleading assertions that are easily disproved by the record do not
help Appellants. Appellants' only remaining allegation is the broad, speculative
theory that TRNC is involved in an illegal scheme whereby it advertises and sells
unlawfully confiscated property through the connivance of the HSBC appellees in
the District. Appellants' Br. 27.  But, again, the record is devoid of even a single
allegation concerning a specific transaction for a specific Appellant's property, a
specific bank account, a specific deed of title, or a single transfer of funds in the
District of Columbia, or anywhere else in the world. The District Court, therefore,
did not abuse its discretion when it held that jurisdictional discovery was not
warranted. *See* Op., JA 298; *Williams*, 756 F.3d at 786 (D.C. Cir. 2014) (refusing
to reverse the district court's order denying jurisdictional discovery "to permit an
unwarranted fishing expedition about the general way [defendant] conducts its

business, to support a broad-ranging theory on [defendant's] culpability in not preventing thefts.").

## IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED APPELLANTS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT BECAUSE THE PROPOSED AMENDMENTS WOULD NOT CURE THE JURISDICTIONAL DEFECTS AGAINST TRNC.

A district court's denial of a motion for leave to amend pleadings is reviewed for abuse of discretion. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). While courts "should freely give leave [to amend] when justice so requires," Federal Rule 15(a)(2), leave may be denied due to "undue delay, bad faith…repeated failure to cure deficiencies by amendments previously allowed…or futility." *Forman v. Davis*, 371 U.S. 178, 182 (1962).

Appellants do not explain how the District Court abused its discretion in denying their motion for leave to file a third amended complaint; they merely restate allegations against TRNC and HSBC that are identical to those raised in the Second Amended Complaint. *See* Appellants' Br. 29 (restating their bald conspiracy theory claim); *accord* Compl. ¶¶ 9, 19, 35, 44, 45, 46, 48, 55, 57, 66, JA 29, 32, 35, 37, 38, 39, 40, 42.

Further, Appellants argue that "TAC alleged additional claims in law and equity," Appellants' Br. 4, and in their motion for leave to amend they conceded that the amendments do not affect TRNC's Federal Rule 12(b)(2) motion:

> The Court's ruling on the issues raised by TRNC will be applicable equally to the parties and claims added in Plaintiffs' proposed Third Amended Complaint.

Pls. Mot. to Amend 2. Because Appellants do not contest that their proposed amendments were futile, they also fail to show how the District Court abused its discretion when it denied Appellants' Motion for Leave to File a Third Amended Complaint.

## A.     The District Court Lacks Jurisdiction Over TRNC Because Appellants Have Named It as an "Unincorporated Association."

Appellants have responded to an argument the District Court discussed in a footnote, but which was not briefed below, noting that TRNC may not have the capacity to be sued under District of Columbia law because Appellants consider it an "unincorporated association." Appellants' Br. 4-5, n. 6. As noted by the District Court, "an unincorporated association may not be sued in its own name." *Millenium Square Residential Ass'n v. 2200 M Street LLC*, 952 F. Supp. 2d 234, 243 (D.D.C. 2013) (quoting *Plan Comm. v. Pricewaterhousecoopers, LLP*, 2007 WL 1191917, at *3-4 (D.D.C. Apr. 20. 2007)) ("[T]he common law of the District of Columbia is that an unincorporated association may not be sued in its own name").

However, an unincorporated association with no capacity to be sued under a state's law can be sued in that state "only to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A). Thus,

Appellants can sue TRNC as an unincorporated association in the District only to enforce their Lanham Act claim, their sole federal claim. *See* Compl. ¶¶ 107-111, JA 49-50.

Appellants do not explain how TRNC can be sued in the District as an unincorporated association for state law claims. Rather, their analysis reflects a misunderstanding of the law. Appellants argue that because this is a class action lawsuit, they are permitted under Fed. R. Civ. P. 23(a) to sue an unincorporated association in its common name "when a federal question or statute is the basis of the subject matter as is the case here." Appellants' Br. 19. Rule 23(a)(1) states that one or more members of a class may sue or be sued as representative parties on behalf of all members only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This rule allows for unincorporated associations that lack the capacity to sue or be sued under state law to sue or be sued as a class by naming their members individually, or if the members are too numerous, by naming a representative. *See* Fed. R. Civ. P. 23(a)(1) Notes on Advisory Committee on Rules, 193, Note to Subdivision (a), Clause 1 ("This Clause is illustrated in actions brought by or against representative of an unincorporated association."). In fact, Rule 23.2 applies only to actions brought by or against the members of an unincorporated association as a class by naming certain members as parties, and its purpose has been to give "entity treatment" to

an association which otherwise cannot be sued under state law. *See* Fed. R. Civ. P. 23.2; *Gravenstein v. Campion*, 96 F.R.D. 137, 140 (D. Alaska 1982). Appellants are mistaken because while they have alleged that they constitute a class, Compl. ¶¶ 76-77, JA 43, TRNC is not a class. Therefore, Rule 23 is entirely irrelevant and does not help them.  For this reason, the District Court's conjecture that TRNC lacks the capacity to be sued in the District of Columbia is likely correct.

## CONCLUSION

For the reasons stated above, the Court should affirm the decision of the District Court in its entirety.

Respectfully Submitted,

/s/ David Saltzman
David Saltzman
SALTZMAN & EVINCH, PLLC
1050 K Street, NW, Suite 1150
Washington, DC 20001
Telephone: 202-637-9877
Telefax: 202-318-0892

*Counsel for Appellee Turkish*
*Republic of Northern Cyprus*

Aug. 6, 2015

On the brief:  Rachel Cerqueira Denktaş

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and D.C. Circuit Rule 32(a), the undersigned hereby certifies that this BRIEF FOR APPELLEE TURKISH REPUBLIC OF NORTHERN CYPRUS complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the Brief contains 12,467 words.

1.     Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B), the brief contains 11,670 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2011 in 14 point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certification.

/s/ David Saltzman
David Saltzman

# United States Court of Appeals
## for the District of Columbia Circuit

*Michali Toumazou, et al. v. Turkish Republic of Northern Cyprus, et al.*, 14-7170

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by SALTZMAN & EVINCH, PLLC, Attorneys for Appellee to print this document. I am an employee of Counsel Press.

On **August 6, 2015**, counsel has authorized me to electronically file the foregoing **Brief for Defendant-Appellee** with the Clerk of Court using the CM/ECF System, which will serve, via e-mail notice of such filing, to any of the following counsel registered as CM/ECF users:

Athan Theodore Tsimpedes
Law Office of Athan T. Tsimpedes
1920 N Street, NW
Washington, DC 20036
202-464-9910
att@tsimpedeslaw.com
Counsel for Appellant

Paul Whitfield Hughes
Mayer Brown, LLP
1999 K Street, NW
Washington, DC 20006-1101
202-263-3000
phughes@mayerbrown.com

Michael O. Ware
Mayer Brown, LLP
1221 Avenue of the Americas
New York, NY 10020
212-506-2500
mware@mayerbrown.com
*Counsel for HSBC Appellees*

Courtesy copies have also been mailed to the above listed counsel.

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via Express Mail.

August 6, 2015

/s/ Robyn Cocho
Robyn Cocho
Counsel Press

54